# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

———

Argued January 16, 2014        Decided April 1, 2014

No. 12-5223

CITIZENS FOR RESPONSIBILITY AND ETHICS IN WASHINGTON,
APPELLANT

v.

UNITED STATES DEPARTMENT OF JUSTICE,
APPELLEE

———

Appeal from the United States District Court
for the District of Columbia
(No. 1:11-cv-00592)

———

*David L. Sobel* argued the cause for the appellant. *Melanie T. Sloan* and *Anne L. Weismann* were on brief.

*Steve Frank*, Attorney, U.S. Department of Justice, argued the cause for the appellee. *Stuart F. Delery*, Assistant Attorney General, *Ronald C. Machen Jr.*, U.S. Attorney, and *Leonard Schaitman*, Attorney, were on brief.

Before: HENDERSON, *Circuit Judge*, and EDWARDS and SENTELLE, *Senior Circuit Judges*.

KAREN LECRAFT HENDERSON, *Circuit Judge*: In 2004, the Federal Bureau of Investigation (FBI) opened a wide-ranging public corruption investigation into the activities

of former lobbyist Jack Abramoff. The investigation yielded 21 guilty pleas or convictions by jury. Two of those convicted, Tony Rudy and Michael Scanlon, once served as senior aides to Tom DeLay—the former Majority Leader of the United States House of Representatives. During the multi-year investigation, the FBI never acknowledged whether DeLay himself was a subject of inquiry. In August 2010, however, DeLay announced that the United States Department of Justice (DOJ) had informed him it had decided not to bring criminal charges against him related to the Abramoff scandal.

Shortly after DeLay's announcement, Citizens for Responsibility and Ethics in Washington (CREW) filed a Freedom of Information Act (FOIA) request seeking various types of documents related to the FBI's investigation of DeLay. After the FBI declined to produce the documents, CREW filed suit against the DOJ (the agency encompassing the FBI). The district court granted summary judgment to the DOJ, concluding that the requested documents were categorically exempt from disclosure under Exemptions 7(A) and 7(C) and that, in the alternative, portions of the requested documents were also exempt under Exemptions 3, 7(D) and 7(E). *Citizens for Responsibility & Ethics in Wash. v. Dep't of Justice*, 870 F. Supp. 2d 70 (D.D.C. 2012). We now reverse and remand. The DOJ has not met its burden of justifying categorical withholding under Exemption 7(A) or 7(C) and has not adequately explained the basis for withholding portions of the requested documents under Exemptions 3, 7(D) and 7(E).

# I

## A.  Legal Framework

FOIA provides that every government agency, "upon any request for records which (i) reasonably describes such records

and (ii) is made in accordance with published rules . . . , shall make the records promptly available to any person." 5 U.S.C. § 552(a)(3)(A). Certain information is exempt from disclosure. Of primary relevance here, "records or information compiled for law enforcement purposes" are exempt,

> but only to the extent that the production of such law enforcement records or information (A) could reasonably be expected to interfere with enforcement proceedings, . . . [or] (C) could reasonably be expected to constitute an unwarranted invasion of personal privacy . . . .

*Id.* § 552(b)(7).

FOIA "was enacted to facilitate public access to Government documents" and "was designed to 'pierce the veil of administrative secrecy and to open agency action to the light of public scrutiny.'" *Dep't of State v. Ray*, 502 U.S. 164, 173 (1991) (quoting *Dep't of Air Force v. Rose*, 425 U.S. 352, 361 (1976)). Because of FOIA's "goal of broad disclosure," the Supreme Court has "insisted that the exemptions be 'given a narrow compass.'" *Milner v. Dep't of Navy*, 131 S. Ct. 1259, 1265 (2011) (quoting *Dep't of Justice v. Tax Analysts*, 492 U.S. 136, 151 (1989)); *accord FBI v. Abramson*, 456 U.S. 615, 630 (1982) ("FOIA exemptions are to be narrowly construed."). FOIA's "limited exemptions do not obscure the basic policy that disclosure, not secrecy, is the dominant objective of the Act." *Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001) (quoting *Rose*, 425 U.S. at 361).

The agency bears the burden of establishing that a claimed exemption applies. *Dep't of Justice v. Reporters Comm. for*

*Freedom of the Press*, 489 U.S. 749, 755 (1989); *Elec. Frontier Found. v. Dep't of Justice*, 739 F.3d 1, 7 (D.C. Cir. 2014); *see* 5 U.S.C. § 552(a)(4)(B).   The agency may carry that burden by submitting affidavits that "describe the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." *Larson v. Dep't of State*, 565 F.3d 857, 862 (D.C. Cir. 2009) (quoting *Miller v. Casey*, 730 F.2d 773, 776 (D.C. Cir. 1984)). Agency affidavits sometimes take the form of a "*Vaughn* index," *see Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973), but there is "no fixed rule" establishing what such an affidavit must look like, *ACLU v. CIA*, 710 F.3d 422, 432 (D.C. Cir. 2013).   "[I]t is the function, not the form, of the index that is important."   *Keys v. Dep't of Justice*, 830 F.2d 337, 349 (D.C. Cir. 1987); *see generally Judicial Watch, Inc. v. FDA*, 449 F.3d 141, 145–46 (D.C. Cir. 2006) (explaining functions of *Vaughn* index).

At times, the FOIA litigation process threatens to reveal "the very information the agency hopes to protect" and therefore it may be necessary for the agency affidavit to contain only "brief or categorical descriptions" of the withheld information.   *ACLU*, 710 F.3d at 432; *see also Judicial Watch*, 449 F.3d at 146.   In such circumstances, "the government need not justify its withholdings document-by-document; it may instead do so category-of-document by category-of-document, so long as its definitions of relevant categories are sufficiently distinct to allow a court to determine whether the specific claimed exemptions are properly applied." *Gallant v. NLRB*, 26 F.3d 168, 173 (D.C. Cir. 1994) (quotation marks and ellipsis omitted); *accord Crooker v. Bureau of Alcohol, Tobacco & Firearms*, 789 F.2d 64, 67 (D.C. Cir. 1986).   Categorical treatment, however, may be used "[o]nly

when the range of circumstances included in the category 'characteristically support[s] an inference' that the statutory requirements for exemption are satisfied." *Nation Magazine v. U.S. Customs Serv.*, 71 F.3d 885, 893 (D.C. Cir. 1995) (quoting *Dep't of Justice v. Landano*, 508 U.S. 165, 177 (1993)); *accord Reporters Comm.*, 489 U.S. at 776 ("[C]ategorical decisions may be appropriate and individual circumstances disregarded when a case fits into a genus in which the balance characteristically tips in one direction."); *Roth v. Dep't of Justice*, 642 F.3d 1161, 1183–84 (D.C. Cir. 2011).

## B. Factual and Procedural Background

On October 19, 2010, after DeLay had announced that he was not going to be criminally charged as a result of the Abramoff investigation, CREW wrote to the FBI requesting

> any witness statements, investigation reports, prosecution memoranda, and [FBI] 302 reports related to the FBI's and DOJ's investigation of [DeLay]. This includes, but is not limited to, the FBI's and DOJ's investigation of relationships between Mr. DeLay and Christine DeLay, Dani DeLay, Jack Abramoff, Edwin Buckham, Tony Rudy, Michael Scanlon, Susan Hirshmann, the Alexander Strategy Group, the National Center for Public Policy Research, eLottery, Inc., the U.S. Family Network, Americans for a Republican Majority PAC ("ARMPAC"), Texans for a Republican Majority PAC ("TRMPAC"), and/or the Commonwealth of the Northern Marianas Islands.

Joint Appendix (JA) 51. Three days later, the FBI responded, stating that, because the requested records involved third

parties, they were generally exempt from disclosure and could not be released absent express authorization from each third party, proof of the third party's death or a "clear demonstration that the public interest in disclosure outweighs the personal privacy interest and that significant public benefit would result from the disclosure of the requested records." JA 107. The FBI's response also included the disclaimer—in FOIA terms, a "*Glomar* response," *see Military Audit Project v. Casey*, 656 F.2d 724 (D.C. Cir. 1981); *Phillippi v. CIA*, 655 F.2d 1325 (D.C. Cir. 1981)—that the response "should not be considered an indication of whether or not records responsive to your request exist in FBI files." JA 107. After exhausting its administrative remedies, CREW filed suit against the DOJ in district court.

The parties cross-moved for summary judgment. In support of its motion, the DOJ submitted a declaration from David Hardy, Section Chief of the Record/Information Dissemination Section, Record Management Division, of the FBI ("Hardy Declaration" or "Declaration," *reprinted at* JA 18–49). The Hardy Declaration recited the FBI's policy of issuing a *Glomar* response to requests for records involving third parties. However, "[i]n light of the acknowledgment of a pending lobbying investigation related to Jack Abramoff," it "pierced the *Glomar* veil and admitted the existence of records potentially responsive to plaintiff's request." Hardy Decl. 31–32. It explained the methodology by which the FBI searched for responsive documents and identified two categories of responsive documents located.

The first category includes FD-302s, forms used by FBI agents "to record information which they obtain through witness interviews, . . . grand jury subpoenas, proffer agreements and immunity statements, and from other federal agencies." *Id.* at 19. More specifically,

> FD-302s contain, in the aggregate, detailed descriptions of names, addresses, telephone numbers of witnesses and other third parties, information, leads, and other valuable investigative information supplied by various sources and third-parties interviewed jointly by the FBI and Other Government Agencies ("OGAs") during the course of their investigation. In addition, responsive FD-302s contain information regarding forensic analysis, information regarding grand jury proffer and immunity statements, and information exchanged between the FBI and OGAs.

*Id.* at 20. The FBI's search for responsive documents turned up an unspecified number of FD-302s dating from June 2004 to October 2009. The second category of responsive documents, investigative materials, "includes derivative communications and reports analyzing the evidence obtained." *Id.* at 21. The Hardy Declaration explained that "[a] derivative communication . . . describes (verbatim or in summary) the contents of the original evidentiary record, how it was obtained, and how it relates to the investigation." *Id.* at 21–22. The Declaration did not specify how many responsive documents in this category were identified.[1]

The Hardy Declaration asserted that all responsive documents were categorically exempt under Exemption 7(A), *see id.* at 16–19, 22, and Exemptions 6 and 7(C), *see id.* at 24–30. It also invoked Exemptions 2, 3, 7(D) and 7(E) to

---

[1] CREW's request also sought prosecution memoranda but the Hardy Declaration stated that no such memoranda were found in the FBI's case file. The FBI's search also turned up responsive public source documents like newspaper clippings but CREW has not sought disclosure of this material.

withhold portions of the responsive material. *Id.* at 22–24, 30–31. The Declaration asserted that "due in particular to the inextricably intertwined and interrelated nature of the documents at issue here, no information is segregable and releasable at this time." *Id.* at 17; *accord id.* at 22.

The district court agreed with the DOJ in every respect. With regard to Exemptions 6 and 7(C), the district court found that, despite his public acknowledgment of the investigation, DeLay retained a substantial privacy interest in preventing disclosure of the contents of the investigative files. *Citizens for Responsibility & Ethics in Wash.*, 870 F. Supp. 2d at 79–80. The district court found little countervailing public interest. Although it "acknowledge[d] that there may be some public interest in the investigative materials and reports," it found that "this minimal public interest does not outweigh the substantial privacy interests of Mr. DeLay and other third parties in the contents of the documents." *Id.* at 81. It therefore held that "the 'balance . . . tips in' favor of exemption" and the DOJ "properly categorically withheld the records pursuant to Exemptions 6 and 7(C)." *Id.* at 81–82 (quoting *Nation Magazine*, 71 F.3d at 893) (omission in district court order).

As for Exemption 7(A), the district court found that "[n]ot only is the investigation still ongoing . . . , but '[t]here are several outstanding convictions and sentencing proceedings . . . which have not yet been completed.'" *Id.* at 82 (quoting Hardy Decl. 17). It found that disclosure of the requested records would interfere with those proceedings by identifying sources, potential witnesses and third parties under investigation, uncovering the government's trial strategy and notifying individuals who remained under investigation. *Id.* at 82. Accordingly, it held that categorical withholding was also appropriate under Exemption 7(A). *Id.* at 82–83.

Finally, the district court accepted the DOJ's alternative grounds for withholding portions of the requested records under Exemptions 2, 3, 7(D) and 7(E). *See id.* at 83 (Exemption 2, internal FBI telephone and fax numbers), 83–84 (Exemption 3, certain grand jury materials), 84–85 (Exemption 7(D), identities of confidential informants and information that could reveal their identities), 85 (Exemption 7(E), information that would reveal law enforcement procedures and techniques). CREW timely appealed.

## II

We review *de novo* the district court's grant of summary judgment. *Pub. Emps. for Envtl. Responsibility v. U.S. Section, Int'l Boundary & Water Comm'n, U.S.-Mex.*, 740 F.3d 195, 200 (D.C. Cir. 2014). We first address the DOJ's categorical withholding claims under Exemptions 7(C) and 7(A), then briefly address the DOJ's claims under Exemptions 3, 7(D) and 7(E).

### A.  Exemption 7(C)

As noted, FOIA exempts from disclosure "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C). CREW does not dispute that the requested records were "compiled for law enforcement purposes." Our task, then, is "to balance the [] privacy interest against the public interest in disclosure." *Nat'l*

*Archives & Records Admin. v. Favish*, 541 U.S. 157, 171 (2004); *accord Reporters Comm.*, 489 U.S. at 776.[2]

*Privacy Interest:* DeLay has two potential privacy interests at stake. The first is his interest in avoiding the stigma of having his name associated with a criminal investigation. "[I]ndividuals have an obvious privacy interest cognizable under Exemption 7(C) in keeping secret the fact that they were subjects of a law enforcement investigation." *Nation Magazine*, 71 F.3d at 894; *see also People for the Ethical Treatment of Animals (PETA) v. Nat'l Insts. of Health*, No. 12-5183, 2014 WL 982875, at \*4 (D.C. Cir. Mar. 14, 2014); *Schrecker v. Dep't of Justice*, 349 F.3d 657, 666 (D.C. Cir. 2003); *Fitzgibbon v. CIA*, 911 F.2d 755, 767 (D.C. Cir. 1990). If a FOIA request is made for FBI investigative records regarding a particular individual, the FBI's mere acknowledgment that it possesses responsive records associates the individual named in the request with suspected criminal activity and therefore a *Glomar* response may be appropriate. *See Nation Magazine*, 71 F.3d at 893 (collecting cases); *see also PETA*, 2014 WL 982875, at \*3. The FBI evidently believed this was such a case when it initially issued a *Glomar* response to CREW's request. A *Glomar* response, however, is "permitted only when confirming or denying the existence of records would itself 'cause harm cognizable under an FOIA exception.'" *Roth*, 642 F.3d at 1178 (quoting *Wolf v. CIA*, 473 F.3d 370, 374 (D.C. Cir. 2007)) (additional quotation marks omitted). In August 2010, DeLay made public

---

[2] Similarly, Exemption 6 applies to "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). We focus here on Exemption 7(C) because it provides broader privacy protection than Exemption 6 and thus "establishes a lower bar for withholding material." *ACLU*, 655 F.3d at 6; *see Favish*, 541 U.S. at 165–66; *Reporters Comm.*, 489 U.S. at 756.

statements confirming the fact that he had been, but was no longer, under investigation. He explained the extent of his cooperation with the investigation and announced the DOJ had decided not to charge him. DeLay's obvious privacy interest in keeping secret the fact that he was the subject of an FBI investigation was diminished by his well-publicized announcement of that very fact. *See Kimberlin v. Dep't of Justice*, 139 F.3d 944, 949 (D.C. Cir. 1998) (prosecutor's public acknowledgment that he was subject of disciplinary proceedings "undoubtedly does diminish his interest in privacy: the public already knows who he is, what he was accused of, and that he received a relatively mild sanction"); *Nation Magazine*, 71 F.3d at 896 (politician waived right to have his name redacted from responsive documents regarding events he publicly discussed); *cf. ACLU v. CIA*, 710 F.3d 422, 428–32 (D.C. Cir. 2013) (*Glomar* response inappropriate where CIA sought to prevent disclosure of whether it had intelligence interest in drone strikes but its official public statements had made clear its interest). Because DeLay's public statements confirmed he had been under investigation, the FBI's acknowledgment that it had responsive records would not itself cause harm by confirming that fact, rendering a *Glomar* response inappropriate. The FBI apparently came to that conclusion itself when it "pierced the *Glomar* veil and admitted the existence of records potentially responsive to plaintiff's request." Hardy Decl. 31–32.

Although DeLay's action lessened his interest in keeping secret the *fact* that he was under investigation, he retained a second, distinct privacy interest in the *contents* of the investigative files. We made that clear in *Kimberlin*, noting that, although a prosecutor who had publicly acknowledged he was the subject of a disciplinary investigation retained little privacy interest in keeping the fact of the investigation secret, he "did not, merely by acknowledging the investigation and

making a vague reference to its conclusion, waive all his interest in keeping the contents of the [disciplinary] file confidential." 139 F.3d at 949; *cf. Ray*, 502 U.S. at 175–76 (although disclosure of interview summaries containing highly personal information constitutes only *de minimis* invasion of privacy if identities of interviewees are unknown, "the invasion of privacy becomes significant when the personal information is linked to particular interviewees"). CREW does not dispute that DeLay retains some privacy interest in the particulars of the investigation but instead contends that such interest is not sufficient to support categorical withholding. *See* Reply Br. of Appellant 11–12, No. 12-5223 (D.C. Cir. June 17, 2013). And although DeLay, as a public official at the time, "may have a somewhat diminished privacy interest," public officials "'do not surrender all rights to personal privacy when they accept a public appointment.'" *Quinon v. FBI*, 86 F.3d 1222, 1230 (D.C. Cir. 1996) (quoting *Bast v. Dep't of Justice*, 665 F.2d 1251, 1255 (D.C. Cir. 1981)); *see also Kimberlin*, 139 F.3d at 949; *Fund for Const. Gov't v. Nat'l Archives & Records Serv.*, 656 F.2d 856, 865 (D.C. Cir. 1981). DeLay's privacy interest in the contents of the investigative files is not insubstantial.[3]

*Public Interest:* On the other side of the scale sits a weighty public interest in shining a light on the FBI's investigation of major political corruption and the DOJ's

---

[3] DeLay is not the only one with a privacy interest in the contents of the investigative files. Other third parties may be mentioned therein, including many of the other individuals listed in CREW's FOIA request. They have a substantial privacy interest in preventing disclosure of their names in law enforcement files. *See Nation Magazine*, 71 F.3d at 894; *Fitzgibbon*, 911 F.2d at 767. The same is true of witnesses, informants and investigating agents who may also be mentioned. *See Favish*, 541 U.S. at 166; *Roth*, 642 F.3d at 1174; *Schrecker*, 349 F.3d at 666.

ultimate decision not to prosecute a prominent member of the Congress for any involvement he may have had. "[T]he only relevant public interest in the FOIA balancing analysis [is] the extent to which disclosure of the information sought would 'she[d] light on an agency's performance of its statutory duties' or otherwise let citizens know 'what their government is up to.'" *Dep't of Def. v. FLRA*, 510 U.S. 487, 497 (1994) (quoting *Reporters Comm.*, 489 U.S. at 773); *accord Bibles v. Or. Natural Desert Ass'n*, 519 U.S. 355, 355–56 (1997) (per curiam). That is, the relevant public interest is *not* to find out what DeLay himself was "up to" but rather how the FBI and the DOJ carried out their respective statutory duties to investigate and prosecute criminal conduct. *See Quinon*, 86 F.3d at 1231.

The DOJ contends that CREW has posited *no* public interest and therefore categorical withholding is appropriate because "[s]omething . . . outweighs nothing every time." Br. of Appellee 10, No. 12-5223 (D.C. Cir. May 15, 2013) (quoting *Nat'l Ass'n of Retired Fed. Emps. v. Horner*, 879 F.2d 873, 879 (D.C. Cir. 1989)). But there is considerably more than nothing on the public interest side of the scale. "[M]atters of substantive law enforcement policy . . . are properly the subject of public concern," *Reporters Comm.*, 489 U.S. at 766 n.18, and disclosure of the requested records would likely reveal a great deal about law enforcement policy, *see Favish*, 541 U.S. at 172 (in addition to significant public interest, requester must "show the information is likely to advance that interest"). Disclosure of the FD-302s and investigative materials could shed light on how the FBI and the DOJ handle the investigation and prosecution of crimes that undermine the very foundation of our government. As the DOJ itself explained, the requested records relate to "a wide-ranging public corruption investigation as part of [the FBI's] ongoing efforts to root out systemic corruption within

the highest levels of government." Hardy Decl. 12. Disclosure of the records would likely reveal much about the diligence of the FBI's investigation and the DOJ's exercise of its prosecutorial discretion: whether the government had the evidence but nevertheless pulled its punches. Indeed, we have repeatedly recognized a public interest in the manner in which the DOJ carries out substantive law enforcement policy (whether or not that interest outweighs any privacy interest at stake in a given case). *See, e.g.*, *ACLU*, 655 F.3d at 12–13 (public interest in DOJ's use of and justification for warrantless cell phone tracking); *Kimberlin*, 139 F.3d at 948–49 (public interest in DOJ disciplinary proceedings); *Dunkelberger v. Dep't of Justice*, 906 F.2d 779, 781 (D.C. Cir. 1990) (public interest both in whether FBI agent participated in scheme to entrap public official and in manner in which agent was disciplined); *Bast*, 665 F.2d at 1255 (public interest in DOJ decision not to prosecute federal judge for alleged misconduct); *see also Ray*, 502 U.S. at 178 (public interest in "knowing whether the State Department has adequately monitored Haiti's compliance with its promise not to prosecute returnees"); *PETA*, 2014 WL 982875, at *6, *8 (public interest in how National Institutes of Health decides whether to investigate complaints of animal abuse and misappropriation of research funds and how it conducts investigations); *Multi Ag Media LLC v. Dep't of Agric.*, 515 F.3d 1224, 1232 (D.C. Cir. 2008) (public interest in determining whether Department of Agriculture "is catching cheaters and lawfully administering its subsidy and benefit programs"); *Stern v. FBI*, 737 F.2d 84, 92 (D.C. Cir. 1984) (recognizing, in dicta, public interest "in knowing that a government investigation itself is comprehensive").

That the investigation implicated a public official as prominent as the former Majority Leader of the House of Representatives further raises the stakes. *See Kimberlin*, 139

F.3d at 949 (court may consider "the rank of the public official involved and the seriousness of the misconduct alleged" in conducting Exemption 7(C) balancing); *see also Jefferson v. Dep't of Justice*, 284 F.3d 172, 180 (D.C. Cir. 2002); *Beck v. Dep't of Justice*, 997 F.2d 1489, 1493 (D.C. Cir. 1993); *Stern*, 737 F.2d at 93–94. Although the DOJ's actions in this case may reflect only one data point regarding the performance of its statutory duties, *cf. Boyd v. Dep't of Justice*, 475 F.3d 381, 388 (D.C. Cir. 2007), it is a significant one: It may show whether prominent and influential public officials are subjected to the same investigative scrutiny and prosecutorial zeal as local aldermen and little-known lobbyists. We do not accept the DOJ's contention that there is *no* public interest in examining the FBI's investigation of, and the DOJ's decision not to charge, the former House Majority Leader for his alleged involvement in one of the most significant political corruption scandals in recent memory.

The DOJ's arguments to the contrary are unpersuasive. First, it contends that "the identity of individuals who appear in law enforcement files would virtually never be 'very probative of an agency's behavior or performance' and would serve a significant public interest only if 'there is compelling evidence that the agency . . . is engaged in illegal activity.'" Br. of Appellee 35 (quoting *SafeCard Servs., Inc., v. SEC*, 926 F.2d 1197, 1206 (D.C. Cir. 1991)). As we have explained, however, *SafeCard* "is one in a long line of FOIA cases holding that disclosure of the *identities* of private citizens mentioned in law enforcement files constitutes an unwarranted invasion of privacy." *Nation Magazine*, 71 F.3d at 896 (emphasis in original) (collecting such cases). Here, however, the DOJ does not seek to withhold only the identities of private citizens; it seeks to withhold every responsive document *in toto*. Although *SafeCard* may authorize the redaction of the names and identifying information of private citizens

mentioned in law enforcement files, it does not permit an agency "to exempt from disclosure *all* of the material in an investigatory record solely on the grounds that the record includes some information which identifies a private citizen or provides that person's name and address." *Id.*; *see also Schrecker*, 349 F.3d at 666 (explaining that *SafeCard* rule applies to names and identifying information); *Mays v. DEA*, 234 F.3d 1324, 1328 (D.C. Cir. 2000) (investigative details is "a category presumably distinct from, and potentially far broader than" personal information).

Next, the DOJ leans on the United States Supreme Court's decision in *Favish*, which held that, if an Exemption 7(C) privacy interest exists, "the usual rule that the citizen need not offer a reason for requesting the information [is] inapplicable" and therefore "the exemption requires the person requesting the information to establish a sufficient reason for the disclosure." 541 U.S. at 172. Accordingly, in cases where "the public interest being asserted is to show that responsible officials acted negligently or otherwise improperly in the performance of their duties, the requester must establish more than a bare suspicion in order to obtain disclosure." *Id.* at 174. *Favish* was such a case, *see id.* at 160–61, 173, but this is not. CREW alleges no impropriety on the part of the FBI or the DOJ;[4] it has nonetheless established a sufficient reason for

---

[4] At argument, counsel for the DOJ suggested that CREW seeks disclosure not to further the purposes of FOIA but rather to smear DeLay on its website. Recording of Argument 21:01 (D.C. Cir. Jan. 16, 2014). That accusation does not affect our inquiry: "[W]hether disclosure of a private document under Exemption 7(C) is warranted must turn on the nature of the requested document and its relationship to 'the basic purpose of [FOIA] to open agency action to the light of public scrutiny,' rather than on the particular purpose for which the document is being requested." *Reporters Comm.*, 489 U.S. at 772 (quoting *Rose*, 425 U.S. at 372) (additional quotation

disclosure independent of any impropriety: "'[M]atters of substantive law enforcement policy are properly the subject of public concern,' whether or not the policy in question is lawful." *ACLU*, 655 F.3d at 14 (quoting *Reporters Comm.*, 489 U.S. 766 n.18) (ellipsis omitted).[5]  Whether government impropriety might be exposed in the process is beside the point.  *See id.* ("Whether the government's [] policy is legal or illegal, proper or improper, is irrelevant to this case.").  There is, then, a significant public interest to be weighed.

*Balancing:*  The DOJ contends—and the district court agreed—that the balance categorically tips in favor of non-disclosure.  We think, however, that the district court drastically understated the public interest when it "acknowledge[d] that there may be some . . . minimal public interest" at stake.  *Citizens for Responsibility & Ethics in Wash.*, 870 F. Supp. 2d at 81.  As the foregoing discussion demonstrates, there are substantial interests on both sides of the scale.  Yet a categorical approach is appropriate only if "a

marks omitted); *accord Bibles*, 519 U.S. at 355–56.  "In other words, the public interest side of the balance is not a function of the identity of the requester . . . ."  *Pub. Citizen Health Research Grp. v. FDA*, 185 F.3d 898, 904 (D.C. Cir. 1999); *see also Multi Ag Media LLC*, 515 F.3d at 1231 n.2 ("Although [the requester] may not want the information to check up on the government itself, the use for which the requestor seeks the information is not relevant for purposes of determining the public interest under FOIA Exemption 6.").

[5] Even *Favish* recognized as "significant the asserted public interest in uncovering deficiencies or misfeasance in the Government's investigations."  541 U.S. at 173.  It simply held that the requester had not made a sufficient showing to substantiate his claim of impropriety.  *Id.* at 175.  In contrast, CREW has made a sufficient showing to establish the public interest in disclosure of matters of substantive law enforcement policy.

case fits into a genus in which the balance *characteristically* tips in one direction." *Reporters Comm.*, 489 U.S. at 776 (emphasis added); *accord Landano*, 508 U.S. at 177; *Roth*, 642 F.3d at 1183–84; *Nation Magazine*, 71 F.3d at 893. In *Kimberlin*, we considered whether a categorical approach was appropriate where the interests to be balanced were a prosecutor's right to privacy regarding the substance of disciplinary proceedings against him and the public interest in examining the DOJ's internal disciplinary process. 139 F.3d at 948–49. In light of the parties' apparent agreement that a categorical approach was inappropriate, we stated that "we may assume for purposes of this opinion that the balance of interests relating to the disclosure of material in [a disciplinary] file will not so often tip toward withholding that a categorical rule against disclosure is appropriate." *Id.* at 948–49. We endorsed a "case-by-case balancing" approach that considers "the rank of the public official involved and the seriousness of the misconduct alleged." *Id.* at 949. We think a similar approach should be followed here. The privacy interests in the two cases are comparable and the public interest here is even stronger. Information about the FBI's and the DOJ's investigation of major, wide-ranging public corruption is more likely to shed light on how the agencies are performing their statutory duties than a discrete internal disciplinary proceeding. Although a substantial privacy interest is at stake here, in light of the similarly substantial countervailing public interest, the balance does not characteristically tip in favor of non-disclosure.

We do not hold that the requested information is not exempt under Exemption 7(C). We simply hold that a *categorical* rule is inappropriate here. As CREW acknowledged at argument, it is likely that some of the requested information ultimately will be exempt from disclosure. Recording of Argument 23:15. For instance, the

names and identifying information of third parties contained in investigative files are presumptively exempt. *Schrecker*, 349 F.3d at 666; *SafeCard*, 926 F.2d at 1206. Much of the information sought might also be withheld under one of the exemptions discussed *infra*. But that does not justify the blanket withholding of all responsive documents. *Nation Magazine*, 71 F.3d at 896. On remand, the DOJ must attempt to make a more particularized showing as to what documents or portions thereof are exempt. The district court must then weigh what information may be withheld under Exemption 7(C) and whether any information is reasonably segregable and may be disclosed.

## B. Exemption 7(A)

FOIA also exempts from disclosure "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information (A) could reasonably be expected to interfere with enforcement proceedings." 5 U.S.C. § 552(b)(7)(A). Exemption 7(A) reflects the Congress's recognition that "law enforcement agencies ha[ve] legitimate needs to keep certain records confidential, lest the agencies be hindered in their investigations or placed at a disadvantage when it [comes] time to present their case." *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 224 (1978). As earlier noted, there is no dispute that the requested records were compiled for law enforcement purposes. To justify withholding, the DOJ must therefore demonstrate that "disclosure (1) could reasonably be expected to interfere with (2) enforcement proceedings that are (3) pending or reasonably anticipated." *Mapother v. Dep't of Justice*, 3 F.3d 1533, 1540 (D.C. Cir. 1993) (emphasis omitted).

The DOJ identifies the relevant enforcement proceedings as follows:

> There are several outstanding convictions and sentencing proceedings in the lobbying investigation related to Abramoff and others which have not yet been completed. These include, but are not limited to, the sentencing hearings of Tony Rudy, Todd Boulanger and Kevin Ring. At least until the above-described cases and all related criminal investigations are completed, the FBI will consider the documents responsive to plaintiff's request to be in an open and pending status, as premature release of any of this information would have a harmful effect on these pending matters, which will be described in further detail below.

Hardy Decl. 17 (footnote omitted). The Declaration goes on to explain how disclosure of the requested records would interfere with these proceedings: revealing the identities of potential witnesses and subjecting them to harassment, disclosing direct and circumstantial evidence, identifying third parties also under investigation and uncovering the government's trial strategy. *See id.* at 18. We take the DOJ to be relying on two types of enforcement proceedings: (1) the specifically-invoked "sentencing hearings of Tony Rudy, Todd Boulanger and Kevin Ring" and (2) "all related criminal investigations." We address each type of proceeding in turn.

The first set of proceedings does not justify withholding because the sentencing hearings—and appeals—of Rudy, Boulanger and Ring are no longer "pending or reasonably anticipated." Exemption 7(A) is temporal in nature. *Robbins Tire*, 437 U.S. at 230–32; *see also North v. Walsh*, 881 F.2d 1088, 1100 (D.C. Cir. 1989) ("Disclosure of the information

[the requester] seeks cannot interfere with parts of the enforcement proceeding already concluded."). We therefore "require a law enforcement agency invoking the exception to show that the material withheld 'relates to a concrete prospective law enforcement proceeding.'" *Juarez v. Dep't of Justice*, 518 F.3d 54, 58 (D.C. Cir. 2008) (quoting *Bevis v. Dep't of State*, 801 F.2d 1386, 1389 (D.C. Cir. 1986)). The proceeding must remain pending at the time of our decision, not only at the time of the initial FOIA request. *Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1115 (D.C. Cir. 2007). Thus, reliance on Exemption 7(A) may become outdated when the proceeding at issue comes to a close. *See Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 870 (D.C. Cir. 1980) ("There is no reason to protect yellowing documents contained in long-closed files."); *see also August v. FBI*, 328 F.3d 697, 698 (D.C. Cir. 2003); *Maydak v. Dep't of Justice*, 218 F.3d 760, 763–64 (D.C. Cir. 2000); *Senate of Puerto Rico v. Dep't of Justice*, 823 F.2d 574, 580–81 (D.C. Cir. 1987).

Since the DOJ filed its Declaration in August 2011, Rudy, Boulanger and Ring have all been sentenced. *See United States v. Rudy*, No. 06-cr-00082-ESH (D.D.C. April 20, 2012); *United States v. Boulanger*, No. 09-cr-00025-RWR (D.D.C. Oct. 14, 2011); *United States v. Ring*, 08-cr-00274-ESH (D.D.C. Oct. 26, 2011). Only Ring appealed and this Court affirmed his conviction more than one year ago. *See United States v. Ring*, 706 F.3d 460 (D.C. Cir. Jan. 25, 2013). The cases are closed—not pending or contemplated—and therefore are not proceedings with which disclosure may interfere. *See Robbins Tire*, 437 U.S. at 232; *North*, 881 F.2d at 1100.[6]

---

[6] When asked at argument, counsel for the DOJ raised for the first time one other proceeding: Fraser Verrusio's appeal of his February 10, 2011 conviction on charges stemming from the Abramoff investigation, the appeal of which remains pending in this Court. *See United States v. Verrusio*, No. 11-3080 (argued Nov. 12,

The second type of proceeding, ongoing at least in August 2011, consists of "all related criminal investigations." Hardy Decl. 17; *see also id.* at 13 (referring to "continuing large public corruption investigation"). The district court cited that language in finding that "the investigation [is] still ongoing." *Citizens for Responsibility in Wash.*, 870 F. Supp. 2d at 82, and the DOJ makes passing reference to the district court's finding in its brief, Br. of Appellees 49. To be sure, an ongoing criminal investigation typically triggers Exemption 7(A): "[S]o long as the investigation continues to gather evidence for a possible future criminal case, and that case would be jeopardized by the premature release of that evidence, Exemption 7(A) applies." *Juarez*, 518 F.3d at 59; *see also Sussman*, 494 F.3d at 1114 ("The enforcement proceedings need not be currently ongoing; it suffices for them to be reasonably anticipated." (quotation marks omitted)). But a combination of factors leaves us with considerable uncertainty about whether a criminal investigation in fact continues to this day. The first is the vague nature of the DOJ's mention of ongoing investigations, especially when coupled with its reliance on other specifically enumerated proceedings. The second is the passage of time: It has been over 30 months

---

2013). The DOJ's Declaration does not reference this proceeding even though Verrusio had been convicted six months, and was sentenced three weeks, before the Declaration was filed. *See United States v. Verrusio*, No. 09-cr-00064-RWR. Moreover, the DOJ neglected to mention the Verrusio appeal when it filed its brief in this Court even though by that time the Rudy, Boulanger and Ring proceedings had all come to a close. *See* Br. of Appellees (D.C. Cir. May 15, 2013). The DOJ has therefore forfeited the argument. *See Roth*, 642 F.3d at 1181 (contention raised for first time at oral argument is forfeited); *cf. Maydak*, 218 F.3d at 764–68 (discussing general rule that agency must assert all exemptions in district court proceeding and limited exceptions thereto).

since the DOJ filed its Declaration and many more since the events underlying the investigation took place. Third, when asked at argument about ongoing proceedings, counsel cited only the *Verrusio* appeal, no ongoing investigation. Recording of Argument 10:04.

Categorical withholding is often appropriate under Exemption 7(A). *Robbins Tire*, 437 U.S. at 236 ("Congress did not intend to prevent the federal courts from determining that, with respect to particular kinds of enforcement proceedings, disclosure of particular kinds of investigatory records while a case is pending would generally 'interfere with enforcement proceedings.'"). In such a case, an agency may satisfy its burden of proof "by grouping documents in categories and offering generic reasons for withholding the documents in each category." *Maydak*, 218 F.3d at 765. We have held, however, that

> if it wishes to adopt the generic approach, [an agency] has a three-fold task. First, it must define its categories functionally. Second, it must conduct a document-by-document review in order to assign documents to the proper category. Finally, it must explain to the court how the release of each category would interfere with enforcement proceedings.

*Bevis*, 801 F.2d at 1389–90. As to the third task, although we give deference to an agency's predictive judgment of the harm that will result from disclosure of information, *see Ctr. for Nat'l Sec. Studies v. Dep't of Justice*, 331 F.3d 918, 927–28 (D.C. Cir. 2003), it is not sufficient for the agency to simply assert that disclosure will interfere with enforcement proceedings; "it must rather demonstrate *how* disclosure" will do so. *Sussman*, 494 F.3d at 1114; *see Campbell v. Dep't of*

*Health & Human Servs.*, 682 F.2d 256, 265 (D.C. Cir. 1982). The DOJ has made no such demonstration here.

The DOJ explains that, in August 2011, there was a wide-ranging public corruption investigation pending and that the release of the requested records could disclose to individuals under investigation the identities of potential witnesses, the content of the government's evidence and trial strategy and the focus of the investigation. Hardy Decl. 16, 18–19. We have often found that similar concerns justify withholding under Exemption 7(A). In the typical case, however, the requested records relate to a specific individual or entity that is the subject of the ongoing investigation, making the likelihood of interference readily apparent. *See, e.g.*, *Juarez*, 518 F.3d at 58; *Swan v. SEC*, 96 F.3d 498, 499 (D.C. Cir. 1996); *Alyeska Pipeline Serv. Co. v. EPA*, 856 F.2d 309, 312 (D.C Cir. 1988); *see also Boyd*, 475 F.3d at 386 (documents relating to requester Boyd exempt where disclosure would reveal details of ongoing investigation of individuals "related to, controlled by, or influenced by Boyd" (alterations omitted)). Here, by contrast, the documents requested relate to DeLay, who is no longer under investigation; he was told more than three years ago that he would not be charged. Thus, assuming some individuals do remain under investigation, the relevant question is whether any of the responsive records, which are primarily about DeLay, would disclose anything relevant to the investigation of *those* individuals. Given the "intertwined and interrelated nature of the documents at issue," Hardy Decl. 17, the answer may well be yes. But without more information about the degree of overlap, we cannot say that the circumstances "'characteristically support an inference'" that disclosure would interfere with any pending enforcement proceeding. *Nation Magazine*, 71 F.3d at 893 (quoting *Landano*, 508 U.S. at 177) (alteration omitted); *see also Mapother*, 3 F.3d at

1542–43 (recognizing potential for interference similar to that described here but nevertheless remanding for district court to review documents and decide in first instance whether disclosure would prejudice government's case).

Moreover, although the DOJ identifies two distinct categories of documents—FD-302s and investigative materials—it never explains how the specific risks entailed in premature disclosure of one category of document might differ from risk of disclosure of the other. *See Campbell*, 682 F.2d at 263–64 ("If a direct relationship between an active investigation and withheld information constituted a sufficient predicate for the invocation of Exemption 7(A), the Court in *Robbins Tire* would not have examined the special risks entailed in premature disclosure of statements of prospective witnesses in NLRB proceedings, the particular kind of records at issue in that case."); *see also Robbins Tire*, 437 U.S. at 236 ("Exemption 7 was designed to eliminate 'blanket exemptions' for Government records simply because they were found in investigatory files . . . ."). Without more "specific information about the impact of the disclosures," we "cannot determine that, as a matter of law, disclosure 'could reasonably be expected to interfere with enforcement proceedings.'" *Sussman*, 494 F.3d at 1114.

For these reasons, the DOJ has not met its burden to warrant categorical withholding. Once again, we do not hold that the requested information is not exempt. On remand, the DOJ must clarify whether a related investigation is in fact ongoing and, if so, how the disclosure of documents relating to DeLay would interfere with it. Of course, this is not to say the DOJ must recite the names of subjects under continuing investigation or otherwise disclose information that would jeopardize the investigation. We simply require the DOJ to be

more specific about the existence *vel non* of such an investigation.

## C.   Exemptions 3, 7(D) and 7(E)

In the alternative, the DOJ briefly invoked—and the district court even more briefly approved—withholding a portion of the requested records under Exemptions 3, 7(D) and 7(E).[7]   *Citizens for Responsibility & Ethics in Wash.*, 870 F. Supp. 2d at 83–85.   The DOJ's Declaration, however, lacks the "reasonably specific detail" required to carry its burden of establishing that each exemption applies, *Larson*, 565 F.3d at 862, and fails to "give the reviewing court a reasonable basis to evaluate the claim of privilege," *Judicial Watch, Inc.*, 449 F.3d

---

[7] It is unclear from the district court order whether it held that the DOJ could withhold *all* responsive records under one of these exemptions or some combination of them, or whether each applies only to certain categories of documents.   *Compare Citizens for Responsibility & Ethics in Wash.*, 870 F. Supp. 2d at 83 ("In any event, I find that defendant can properly withhold the records pursuant to FOIA Exemptions 2, 3, 7(D), and 7(E)."), *and id.* at 85 (finding "the information" supplied by confidential sources exempt under Exemption 7(D) but not specifying whether "the information" includes all responsive records), *with id.* at 83 (only internal telephone and fax numbers exempt under Exemption 2), *and id.* at 84 (only "information that defendant seeks to withhold pursuant to Rule 6(e)" exempt under Exemption 3).   To the extent the district court held that any of these exemptions categorically exempts all responsive documents, we think that holding was error.   For the reasons discussed *infra*, the DOJ has not met its burden of demonstrating that the circumstances "'characteristically support an inference'" that Exemption 3, 7(D) or 7(E) applies.   *Nation Magazine*, 71 F.3d at 893 (quoting *Landano*, 508 U.S. at 177) (alteration omitted).   CREW does not challenge the district court's holding regarding the FBI's invocation of Exemption 2, which was expressly limited to internal FBI telephone and fax numbers.

at 146 (quoting *Gallant*, 26 F.3d at 172–73). The Declaration never specifies how many responsive documents exist and makes no attempt to link each exemption to specific documents. Moreover, the explanation for the applicability of each exemption is inadequate. To aid the parties—and district court—on remand, we briefly highlight the shortcomings of the record before us.

***Exemption 3:*** FOIA exempts matters "specifically exempted from disclosure by statute," 5 U.S.C. § 552(b)(3), including a disclosure violative of Federal Rule of Criminal Procedure 6(e), which provides for the secrecy of grand jury proceedings. *See Stolt-Nielsen Transp. Grp. Ltd. v. United States*, 534 F.3d 728, 732 (D.C. Cir. 2008); *Fund for Const. Gov't*, 656 F.2d at 867–68. "Rule 6(e) applies if the disclosed material would 'tend to reveal some secret aspect of the grand jury's investigation,' including 'the identities of witnesses or jurors, the substance of testimony, the strategy or direction of the investigation,' or 'the deliberations or questions of jurors.'" *Hodge v. FBI*, 703 F.3d 575, 580 (D.C. Cir. 2013) (quoting *Senate of Puerto Rico*, 823 F.2d at 582). The DOJ cites Exemption 3 to withhold "the names of potential grand jury witnesses and interview statements pertaining to signed proffer agreements and immunity statements, which could be used as evidence before a Federal Grand Jury." Hardy Decl. 24; *see also id.* at 20 ("Exemption 3 is asserted to protect information contained in the FD-302s which identifies specific records that may be subpoenaed by a Federal Grand Jury.").

The DOJ bears the burden of "demonstrating some 'nexus between disclosure and revelation of a protected aspect of the grand jury's investigation.'" *Lopez v. Dep't of Justice*, 393 F.3d 1345, 1350 (D.C. Cir. 2005) (quoting *Senate of Puerto Rico*, 823 F.2d at 584). But we are told only that the requested documents contain information that "*could* be used as evidence

before a Federal Grand Jury" or "*may* be subpoenaed by a Federal Grand Jury" and therefore that "any such disclosure would *clearly* violate the secrecy of the Grand Jury proceedings." Hardy Decl. 20, 24 (emphases added). This conclusory explanation is insufficient. "[T]here is no *per se* rule against disclosure of any and all information which has reached the grand jury chambers," *Lopez*, 393 F.3d at 1349, let alone any and all information which "could" reach the grand jury, *see In re Sealed Case*, 192 F.3d 995, 1001–03 (D.C. Cir. 1999) (per curiam); *Wash. Post Co. v. Dep't of Justice*, 863 F.2d 96, 100 (D.C. Cir. 1988); *see also Stolt-Nielsen Transp. Grp. Ltd.*, 534 F.3d at 732 ("[T]he government may not bring information into the protection of Rule 6(e) and thereby into the protection afforded by Exemption 3, simply by submitting it as a grand jury exhibit."). Although we do not doubt that some of the requested records may fall under Exemption 3, the DOJ has not yet supplied sufficient information for a court to make that determination. *Senate of Puerto Rico*, 823 F.2d at 584; *see Lopez*, 393 F.3d at 1349–51.

*Exemption 7(D):* FOIA also exempts records or information compiled for law enforcement purposes to the extent disclosure of such records "could reasonably be expected to disclose the identity of a confidential source" or "information furnished by a confidential source." 5 U.S.C. § 552(b)(7)(D). The DOJ cites this exemption to "protect the identities of, and information received from, individuals who provided information to the FBI during the course of the . . . investigation." Hardy Decl. 21. Unlike Exemption 7(C), Exemption 7(D) does not require balancing. *Roth*, 642 F.3d at 1184; *Davis v. Dep't of Justice*, 968 F.2d 1276, 1281 (D.C. Cir. 1992). It does, however, require a showing that the source is a confidential one. *See Landano*, 508 U.S. at 172 ("[T]he question is not whether the requested *document* is of the type that the agency usually treats as confidential, but whether the

particular *source* spoke with an understanding that the communication would remain confidential."). "[I]t is not enough for the agency to claim that all sources providing information in the course of a criminal investigation do so on a confidential basis." *Roth*, 642 F.3d at 1184; *see Landano*, 508 U.S. at 180–81. Yet that is essentially what the DOJ has done by stating, in the alternative and without specific explanation, that all of its sources "were interviewed either under express confidentiality and/or under circumstances from which an assurance of confidentiality may be implied." Hardy Decl. 21; *see also id.* at 30–31 (explaining how informants provide information during the course of "*an* investigation," with no tie to *this* investigation). Such boilerplate will not do. *See Billington v. Dep't of Justice*, 233 F.3d 581, 584 (D.C. Cir. 2000) ("This bald assertion that express assurances were given amounts to little more than recitation of the statutory standard, which we have held is insufficient."); *Campbell v. Dep't of Justice*, 164 F.3d 20, 34–35 (D.C. Cir. 1998) (rejecting assertion that express assurances of confidentiality were given where declarant demonstrated no basis for knowledge of alleged fact); *Computer Prof'ls for Soc. Responsibility v. Secret Serv.*, 72 F.3d 897, 906 (D.C. Cir. 1996) (description of "the manner in which an agency 'routinely' handles information is not sufficient to establish an implied assurance of confidentiality as to any particular source"). To invoke Exemption 7(D) on remand, the DOJ must either "present probative evidence that the source did in fact receive an express grant of confidentiality," *Campbell*, 164 F.3d at 34 (quotation omitted), or "'point to more narrowly defined circumstances that . . . support the inference' of confidentiality." *Roth*, 642 F.3d at 1184 (quoting *Landano*, 508 U.S. at 179).

***Exemption 7(E):*** FOIA also exempts records or information compiled for law enforcement purposes to the

extent release of such records "would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7)(E). The DOJ cites Exemption 7(E) "to protect procedures and techniques used by FBI [agents] during the investigation." Hardy Decl. 21; *accord id.* at 31. This near-verbatim recitation of the statutory standard is inadequate. We are not told what procedures are at stake. (Perhaps how the FBI conducts witness interviews? Or how it investigates public corruption?) Nor are we told how disclosure of the FD-302s or investigative materials could reveal such procedures. (Are the procedures spelled out in the documents? Or would the reader be able to extrapolate what the procedures are from the information contained therein?) Although Exemption 7(E) sets a "low bar for the agency to justify withholding," *Blackwell v. FBI*, 646 F.3d 37, 42 (D.C. Cir. 2011), the agency must at least provide *some* explanation of what procedures are involved and how they would be disclosed. *See id.* (FBI sought to withhold "details about procedures used during the forensic examination of a computer by an FBI forensic examiner" (quotation marks omitted)); *Mayer Brown LLP v. IRS*, 562 F.3d 1190, 1192 (D.C. Cir. 2009) (IRS sought to withhold information setting forth "settlement strategies and objectives, assessments of litigating hazards, and acceptable ranges of percentages for settlement" (quotation marks and alteration omitted)); *Morley v. CIA*, 508 F.3d 1108, 1128–29 (D.C. Cir. 2007) (CIA sought to withhold information revealing procedures for conducting security clearances and background investigations).[8]

---

[8] Twice the DOJ asserted that disclosure of the requested records "could enable the targets of these techniques to avoid detection or develop countermeasures to circumvent the ability of

## III

The DOJ has not met its burden to justify categorical withholding under Exemption 7(A) or 7(C). Nor has it provided sufficient detail at this stage for a court to determine whether a portion of the requested records may be withheld under Exemption 3, 7(D) or 7(E). Summary judgment for the defendant is therefore reversed and the case is remanded for further proceedings consistent with this opinion.

*So ordered.*

---

the FBI to effectively use important law enforcement techniques." Hardy Decl. 21, 31. We note some disagreement whether the "risk of circumvention" requirement applies to records containing "techniques and procedures" or only to records containing "guidelines." *See Pub. Emps. for Envtl. Responsibility*, 740 F.3d at 204 n.4. We need not pursue that issue, however, because the antecedent questions of what techniques and procedures are involved and how they could be disclosed have not been answered sufficiently.