# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued March 3, 2017           Decided April 21, 2017

No. 16-5138

CITIZENS FOR RESPONSIBILITY AND ETHICS IN WASHINGTON,
APPELLANT

v.

UNITED STATES DEPARTMENT OF JUSTICE,
APPELLEE

———

Appeal from the United States District Court
for the District of Columbia
(No. 1:11-cv-00592)

———

*David L. Sobel* argued the cause for appellant. With him on the briefs was *Adam J. Rappaport*.

*William E. Havemann*, Attorney, U.S. Department of Justice, argued the cause for appellee. With him on the brief were *Benjamin C. Mizer*, Principal Deputy Assistant Attorney at the time the brief was filed, and *Matthew M. Collette*, Attorney.

Before: TATEL, SRINIVASAN and WILKINS, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* WILKINS.

WILKINS, *Circuit Judge*: Citizens for Responsibility and Ethics in Washington (CREW) appealed from an order of the District Court granting summary judgment in favor of the United States Department of Justice (DOJ) and denying CREW's cross-motion for partial summary judgment. In granting summary judgment, the District Court agreed that Exemption 5 in the Freedom of Information Act (FOIA) shielded certain Federal Bureau of Investigation (FBI) correspondence and that Exemptions 6 and 7(C) could be invoked to protect names and other personal information contained in responsive records.

We reverse the District Court's grant of summary judgment. We conclude that the Government's assertion of Exemption 5 was untimely and, before ruling on Exemptions 6 and 7(C), a more particularized balancing of the interests at stake is required.

**I.**

"In 2004, the Federal Bureau of Investigation (FBI) opened a wide-ranging public corruption investigation into the activities of former lobbyist Jack Abramoff. The investigation yielded 21 guilty pleas or convictions by jury." *CREW v. DOJ* (*CREW I*), 746 F.3d 1082, 1087 (D.C. Cir. 2014). Two of those convicted had been senior aides to former House of Representatives Majority Leader Tom DeLay. *Id.* Although the FBI never acknowledged whether DeLay was a subject of their investigation, in August 2010, DeLay himself announced that DOJ had informed him that it would not bring charges against him. *Id.*

In October 2010, CREW filed a FOIA request with the FBI, a component of DOJ. The request sought information related to DOJ's investigation of DeLay, including records

related to DOJ's investigation of relationships between DeLay and fourteen specified individuals and entities.

DOJ declined to provide any requested documents on the basis that, "because the requested records involved third parties, they were generally exempt from disclosure and could not be released absent express authorization from each third party, proof of the third party's death or a clear demonstration that the public interest in disclosure outweighs the personal privacy interest and that significant public benefit would result from the disclosure of the requested records." *Id.* at 1089 (internal quotation marks omitted).

After exhausting its administrative remedies, CREW filed suit against DOJ. *Id.* The parties filed cross-motions for summary judgment. *Id.* In support of its motion, DOJ submitted a declaration asserting that "all responsive documents were categorically exempt under Exemption 7(A) and Exemptions 6 and 7(C)." *Id.* at 1090 (citations omitted). The Government also invoked Exemptions 2, 3, 7(D) and 7(E) to withhold some portions of the responsive material.[1] *Id.* CREW specifically sought prosecution memoranda, but the declaration stated that no prosecution memoranda were found in the FBI's case file. *Id.* at 1090 n.1. The District Court granted DOJ's motion for summary judgment, agreeing with DOJ on the application of each cited exemption. *Id.*

---

[1] Exemption 2 applies to information "related solely to the internal personnel rules and practices of an agency"; Exemption 3 applies to certain information "specifically exempted from disclosure by statute"; Exemption 6 applies to "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy"; and Exemption 7 applies to certain categories of "records or information compiled for law enforcement purposes." 5 U.S.C. § 552(b).

On appeal, we reversed the grant of summary judgment and remanded to the District Court. *Id.* at 1102. We found that DOJ had "not met its burden to justify categorical withholding under Exemption 7(A) or 7(C)" and had not "provided sufficient detail at this stage for a court to determine whether a portion of the requested records may be withheld under Exemption 3, 7(D) or 7(E)."[2] *Id.*

Of particular relevance here, we noted the "weighty public interest in shining a light on the FBI's investigation of major political corruption and the DOJ's ultimate decision not to prosecute a prominent member of the Congress for any involvement he may have had." *Id.* at 1092-93. "[T]he relevant public interest," we explained, "is not to find out what DeLay himself was 'up to' but rather how the FBI and the DOJ carried out their respective statutory duties to investigate and prosecute criminal conduct." *Id.* at 1093 (emphasis omitted). Specifically, we noted the likelihood that the requested information would "reveal much about the diligence of the FBI's investigation and the DOJ's exercise of its prosecutorial discretion: whether the government had the evidence but nevertheless pulled its punches." *Id.*

Foreshadowing the present controversy, we also noted that persons other than DeLay might be mentioned in investigative files and that those individuals "have a substantial privacy interest in preventing disclosure of their names in law enforcement files." *Id.* at 1092 n.3. In recognition of this privacy interest, "the names and identifying information of

---

[2] CREW did not object to the District Court's grant of summary judgment with respect to the application of Exemption 2, which applied only to internal FBI telephone and fax numbers. *Id.* at 1099 n.7.

third parties contained in investigative files are presumptively exempt." *Id.* at 1096.

Since we had rejected the categorical withholding of responsive documents, the task for DOJ on remand was to "make a more particularized showing as to what documents or portions thereof are exempt." *Id.* The District Court then had the responsibility to "weigh what information may be withheld under Exemption 7(C) and whether any information is reasonably segregable and may be disclosed." *Id.*

After our decision, "the FBI ran its search for responsive records anew, using the same parameters and garnering the same results as its initial search." *CREW v. DOJ* (*CREW II*), 174 F. Supp. 3d 415, 419 (D.D.C. 2016). The search yielded a total of 328 pages of responsive material, 124 pages of which were released to CREW, albeit with redactions. *Id.* at 420. The FBI withheld in full the remaining 204 pages. *Id.* To justify its redactions and withholding, the FBI invoked FOIA Exemptions 3, 5, 6, 7(C), 7(D) and 7(E).[3] *Id.* The Government again moved for summary judgment, which CREW opposed with respect to the application of Exemptions 5, 6 and 7(C). *Id.* In a March 30, 2016 Memorandum Opinion and Order, the District Court again granted the Government's motion for summary judgment and denied a cross-motion for partial summary judgment filed by CREW. *Id.* at 427.

## II.

On appeal, CREW raises two issues. First, CREW asserts that the District Court erred in permitting the FBI to rely on Exemption 5, which it had not raised during the initial round of

---

[3] Exemption 5 covers "inter-agency or intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5).

summary judgment. Second, CREW alleges error in the District Court's allowing the FBI to redact names of all individuals other than DeLay and Abramoff that were contained in responsive records.

**A.**

In FOIA cases, the Government generally "must assert all exemptions at the same time, in the original district court proceedings." *Maydak v. DOJ*, 218 F.3d 760, 764 (D.C. Cir. 2000). "[T]he delay caused by permitting the government to raise its FOIA exemption claims one at a time interferes both with the statutory goals of efficient, *prompt*, and full disclosure of information, and with interests of judicial finality and economy." *Id.* (citations omitted) (internal quotation marks omitted).

We have recognized two exceptions to this general rule. The first is for "extraordinary circumstances where, from pure human error, the government failed to invoke the correct exemption and will have to release information compromising national security or sensitive, personal, private information unless the court allows it to make an untimely exemption claim." *Id.* at 767. The second is "where a substantial change in the factual context of the case or an interim development in the applicable law forces the government to invoke an exemption after the original district court proceedings have concluded." *Id*.

The Government does not contend that either exception is applicable here. In fact, the District Court noted that the Government's "briefing contains no claim of changed factual or legal circumstances, no *mea culpa* or acknowledgment [of] mistake, and indeed *no explanation at all* as to its failure to

assert Exemption 5 in regards to the FBI's records in the original proceedings." *CREW II*, 174 F. Supp. 3d at 423.

Nevertheless, the District Court allowed the Government to rely on Exemption 5. The District Court observed that CREW's objection was solely on waiver grounds and CREW did not advance any substantive argument for why Exemption 5 would not cover the pages at issue. *See id.* at 421, 423-24. In the District Court's view, precluding the Government from applying Exemption 5 "would not advance the policy goals supporting the *Maydak* rule," *id.* at 424, because CREW's failure to present objections to Exemption 5 on the merits meant it had effectively conceded the issue and there was "no occasion for delaying the process with presentation and consideration of fresh arguments about the applicability of the exemption," *id.* at 423.

As we have previously explained, though, "[t]he timeliness rule is concerned not just with efficiency in a given case, but also with efficiency in the long run, and it disserves this broader goal to permit untimely defenses, even after they have been argued, to prevail." *Wash. Post Co. v. Dep't of Health & Human Servs.*, 795 F.2d 205, 209 (D.C. Cir. 1986). It may well be that, in this particular case, the District Court could just as quickly have considered and accepted the Exemption 5 defense as rejected it as untimely. But this alone does not answer the critical question of whether the ends of promptness and efficiency are better served by nevertheless preventing the Government from invoking a new exemption on remand following an appeal. If Exemption 5 had been invoked at the outset, we could have resolved the merits of its application in the prior appeal. A robust timeliness rule encourages the Government to present all its arguments the first time around. Weakening that rule lessens the incentive. In addition, requiring a FOIA requester to brief and argue the

merits of newly asserted defenses – rather than simply adverting to the timeliness rule – imposes additional costs on that party. *Cf. id.* ("It would be grotesque to present the [FOIA requester] with the bill for an entertainment which it alone insisted should not have been staged."). These considerations suggest that a robust timeliness rule well serves FOIA's goal of a prompt and efficient process. Of course, there will be "unusual situations, largely beyond the government's control," *Maydak*, 218 F.3d at 767, in which other considerations override those motivating the timeliness rule – this Court's previously articulated exceptions address such circumstances – but the Government has not made any claim that this is such a case.

Before the District Court, the Government asserted that it had in fact raised Exemption 5 in the initial round of summary judgment. *See CREW II*, 174 F. Supp. 3d at 422. On appeal, the Government has abandoned that contention, in apparent recognition of the fact that Exemption 5 was asserted only by the DOJ's Criminal Division to shield prosecution memoranda, not by the FBI to protect the six pages of an electronic communication that are now at issue. *Id.*

The Government continues to argue, though, that the fact that the Criminal Division cited Exemption 5 in the original proceedings precludes any inference of gamesmanship or sandbagging with respect to the FBI's initial failure to make a similar assertion. That contention is belied by the fact that DOJ utilized a decentralized process, in which the Criminal Division and the FBI independently decided whether or not to release responsive records that originated in their respective components. *Id.* The decision of the Criminal Division to invoke Exemption 5 therefore tells us nothing about why the FBI chose not to cite it. In any event, the application of the

*Maydak* timeliness rule does not require a finding of bad faith or intentional gamesmanship.

As the Government's invocation of Exemption 5 was untimely and the Government has not provided a sufficient basis for declining to apply the *Maydak* timeliness rule, Exemption 5 cannot shield any of the information sought by CREW in this appeal.

**B.**

We turn next to the question of whether summary judgment was proper with respect to Exemptions 6 and 7(C).

FOIA's Exemption 6 encompasses "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy," while Exemption 7(C) protects "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6)-(7). When information is claimed to be exempt from disclosure under both provisions, courts "focus . . . on Exemption 7(C) because it provides broader privacy protection than Exemption 6 and thus establishes a lower bar for withholding material." *CREW I*, 746 F.3d at 1091 n.2 (internal quotation marks omitted).

When examining an assertion of Exemption 7(C), a court must "balance the [ ] privacy interest against the public interest in disclosure." *Id.* at 1091 (alteration in original). "At all times, courts must bear in mind that FOIA mandates a strong presumption in favor of disclosure, and that the statutory exemptions, which are exclusive, are to be narrowly

construed." *ACLU v. U.S. Dep't of Justice*, 655 F.3d 1, 5 (D.C. Cir. 2011) (alteration omitted) (citations omitted) (internal quotation marks omitted).

This dispute over the application of the personal privacy exemptions centers on whether the Government is permitted to redact the names (and other personally identifying information) of individuals other than DeLay and Abramoff from responsive records. These names fall into three general categories. First, records may contain names of FBI or other federal government personnel. CREW does not challenge the redaction of this category of names. Second, individuals may be named or otherwise identified who have not previously been publicly implicated in the corruption investigation. Where, as here, there is no "compelling evidence that the agency is engaged in illegal activity," such names are "categorically . . . exempt from disclosure." *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1206 (D.C. Cir. 1991).

Finally, there is the third category: individuals who have already been publicly identified – either through agency press releases or testimony in open court – as having been charged, convicted or otherwise implicated in connection with the public corruption investigation that encompassed Abramoff and DeLay. CREW attached eight press releases to its briefing before the District Court, containing the names of sixteen such individuals in addition to Abramoff. As explained below, these individuals have a diminished privacy interest in certain information that may be contained in the records at issue, and therefore the categorical rule of non-disclosure announced in *SafeCard* does not apply to them.

Determining whether the cited FOIA exemptions apply to this third category of individuals requires a weighing of the privacy interests and public interest at issue in this case. As we

explained at length in our previous opinion, *see CREW I*, 746 F.3d at 1092-96, a "weighty public interest" is present here: the interest in finding out "how the FBI and the DOJ carried out their respective statutory duties to investigate and prosecute criminal conduct." *Id.* at 1092-93. This interest is served by disclosures that "shin[e] a light on the FBI's investigation of major political corruption and the DOJ's ultimate decision not to prosecute a prominent member of the Congress for any involvement he may have had." *Id.* at 1093.

Moving to the opposing side of the scale, we have observed that "individuals have an obvious privacy interest cognizable under Exemption 7(C) in keeping secret the fact that they were subjects of a law enforcement investigation." *Nation Magazine v. U.S. Customs Serv.*, 71 F.3d 885, 894 (D.C. Cir. 1995). "That privacy interest also extends to third parties who may be mentioned in investigatory files, as well as to witnesses and informants who provided information during the course of an investigation." *Id.* Even after an individual has been convicted, we have recognized that the individual retains a privacy interest in the facts of his conviction. *See ACLU*, 655 F.3d at 7; *cf. U.S. Dep't of Justice v. Reporters Comm. For Freedom of the Press*, 489 U.S. 749, 763-65 (1989). However, privacy interests of individuals who have been convicted or pled guilty "are weaker than for individuals who have been acquitted or whose cases have been dismissed" and are "plainly substantially weaker than the privacy interests of individuals who have been investigated but never publicly charged at all." *ACLU*, 655 F.3d at 7; *cf. Reporters Comm.*, 489 U.S. at 763 n.15 ("The common law recognized that one did not necessarily forfeit a privacy interest in matters made part of the public record, albeit the privacy interest was diminished . . . .").

These initial observations do not resolve the question of whether the Government redactions of names were proper in this case. On the one hand, the substantial public interest present here may outweigh privacy interests that have been diminished by prior disclosures, including through guilty pleas and convictions. On the other hand, a responsive document could reveal new information about a person's conduct, going beyond the facts in the public record related to that person's conviction and sentencing. Under such circumstances, that individual would retain a privacy interest in the non-disclosure of the new information.

"Because the myriad of considerations involved in the Exemption 7(C) balance defy rigid compartmentalization, per se rules of nondisclosure based upon the type of document requested, the type of individual involved, or the type of activity inquired into, are generally disfavored." *Stern v. FBI*, 737 F.2d 84, 91 (D.C. Cir. 1984). The privacy interests of individuals who have not been convicted in connection with this investigation – and even more so those who have not been publicly linked with the investigation whatsoever – differ greatly from those of individuals who were convicted or pled guilty for their roles. Connecting the names of individuals to information contained in the documents at issue could add much, or not at all, to the public's understanding of how the Government carried out its investigation and decision not to prosecute DeLay. There is little we can conclude in the abstract. This area is simply not well-suited to categorical determinations.

For this reason, we reverse the grant of summary judgment and remand to the District Court. With respect to those individuals with diminished privacy interests, the withholding of information pursuant to Exemptions 6 and 7(C) must be subjected to a particularized weighing of the public and privacy

interests that would be implicated by the disclosure sought by CREW. When conducting this balancing, it is CREW's burden to "show the information is likely to advance" the public interest in learning whether DOJ pulled its punches. *Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157, 172 (2004). For its part, the Government must account for the privacy interests at stake, recognizing that previous disclosures or admissions may have diminished those interests.

\*\*\*

For the foregoing reasons, the grant of summary judgment is reversed and we remand to the District Court for proceedings consistent with this opinion.

*So ordered.*