# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued October 13, 2021       Decided November 30, 2021

No. 20-5364

ELECTRONIC PRIVACY INFORMATION CENTER,
APPELLEE

JASON LEOPOLD AND BUZZFEED, INC.,
APPELLANTS

v.

UNITED STATES DEPARTMENT OF JUSTICE, ET AL.,
APPELLEES

———

Appeal from the United States District Court
for the District of Columbia
(No. 1:19-cv-00957)

———

*Matthew V. Topic* argued the cause and filed the briefs for appellants.

*Casen B. Ross*, Attorney, U.S. Department of Justice, argued the cause for appellees. With him on the brief were *Brian M. Boynton*, Acting Assistant Attorney General, and *Sharon Swingle*, Attorney.

Before: HENDERSON and TATEL, *Circuit Judges*, and EDWARDS, *Senior Circuit Judge*.

Opinion for the Court filed by *Circuit Judge* HENDERSON.

KAREN LECRAFT HENDERSON, *Circuit Judge*: Jason Leopold and BuzzFeed, Inc. (together, BuzzFeed), a media outlet employing Leopold as a reporter, sued the United States Department of Justice (DOJ) pursuant to the Freedom of Information Act (FOIA), 5 U.S.C. § 552. BuzzFeed seeks disclosure of an unredacted version of the report prepared by Special Counsel Robert S. Mueller III on his investigation into Russian interference in the 2016 United States presidential election (Mueller Report).[1] FOIA provides exemptions permitting an agency to withhold from disclosure certain categories of information it would otherwise be statutorily required to disclose. DOJ justified its redactions using several of these exemptions.

The parties filed cross-motions for summary judgment, which the district court granted in part and denied in part, permitting most of DOJ's redactions. BuzzFeed challenges only one aspect of its ruling in this appeal: its grant of summary judgment to DOJ with respect to information redacted pursuant to FOIA Exemption 7(C), 5 U.S.C. § 552(b)(7)(C), and relating to individuals investigated but not charged by the Special Counsel. Exemption 7(C) permits the withholding of law enforcement records which, if disclosed, "could reasonably be expected to constitute an unwarranted invasion of personal privacy." *Id.* In granting summary judgment to DOJ, the district court determined that the privacy interests of the individuals whose information DOJ withheld under the exemption were not outweighed by the public's interest in disclosure of the redacted information.

---

[1] Although the Electronic Privacy Information Center (EPIC) also sued DOJ and its suit was consolidated with the one brought by BuzzFeed, EPIC is not a party to this appeal.

We agree but only with respect to redacted passages containing personally identifying facts about individuals that are not disclosed elsewhere in the Report and would be highly stigmatizing to the individuals' reputations. We disagree, however, regarding redacted passages that primarily show how the Special Counsel interpreted relevant law and applied it to already public facts available elsewhere in the Report in reaching individual declination decisions. We determine after our own *in camera* review of the Report that these passages show only how the government reached its declination decisions and do not contain new facts or stigmatizing material. In so concluding, we follow our pronouncement that "[m]atters of substantive law enforcement policy are properly the subject of public concern" and are "a sufficient reason for disclosure independent of any impropriety." *Citizens for Resp. & Ethics in Wash. v. Dep't of Just.* (*CREW I*), 746 F.3d 1082, 1095 (D.C. Cir. 2014) (citation omitted). Accordingly, we affirm in part and reverse in part.

## I.

We begin with a brief history of the circumstances surrounding the commencement of Special Counsel Mueller's investigation and the release of his Report. Because the district court ably depicted this history, which the parties do not dispute, we need not recount it at length here. *See Elec. Priv. Info. Ctr. v. Dep't of Just.* (*EPIC I*), 442 F. Supp. 3d 37, 40–46 (D.D.C. 2020).

In May 2017, then-Acting Attorney General Rod J. Rosenstein appointed Special Counsel Mueller to investigate Russian interference in the 2016 presidential election and to determine whether any individuals associated with President Donald Trump's campaign were linked to or coordinated with the Russian government. *Id.* at 40–41. Nearly two years later,

in March 2019, Special Counsel Mueller concluded his investigation and provided Attorney General William Barr with a report detailing his conclusions. *Id.* at 41.

After reviewing the Report, Attorney General Barr advised the Congress of "the principal conclusions reached by Special Counsel [Mueller]" but did not immediately provide it with either an unredacted or a redacted version of the Report. *Id.* (alteration in original). The Attorney General asserted that the investigation culminating in the Mueller Report "did not find that the Trump campaign or anyone associated with it conspired or coordinated with Russia in its efforts to influence" the 2016 presidential election. *Id.* He stated further that the Mueller Report concluded that the evidence developed during the investigation was not sufficient to establish that President Trump obstructed justice. *Id.* at 41–42. Attorney General Barr also announced his intention to begin the process of determining what information in the Report was suitable for public release. *Id.* at 42. Shortly thereafter, Special Counsel Mueller advised the Attorney General by letter of his concerns about the latter's public characterization of the Report, which he argued "did not fully capture the context, nature, and substance of . . . [his] Office's work and conclusions" and created "public confusion" about the results of the investigation. *Id.* The Attorney General responded with yet another letter to the Congress maintaining that his initial communication was merely a summary of the Mueller Report's main conclusions and "did not purport to be[] an exhaustive recounting" of the investigation or the Report. *Id.*

A few weeks later, Attorney General Barr held a press conference at which he repeated the conclusions expressed in his first communication to the Congress—namely that the Trump campaign did not coordinate, conspire or collude with the Russian government in that government's scheme to

interfere in the presidential election and that there was not enough evidence to establish that President Trump committed an obstruction-of-justice offense. *Id.* at 42–44. He then made available to the Congress and the public a redacted version of the Mueller Report and invoked numerous FOIA exemptions to justify the redactions. *See id.* at 44–45.

BuzzFeed, along with the Electronic Privacy Information Center (EPIC), submitted FOIA requests to DOJ seeking a copy of the unredacted version of the Mueller Report. *Id.* at 46–47. Although DOJ granted BuzzFeed's request for expedited processing of the FOIA request, it did not produce the unredacted report by the applicable deadline. *Id.* at 47. BuzzFeed then filed this suit in district court. *Id.* After the parties filed cross-motions for summary judgment, the district court ordered DOJ to submit the unredacted version of the Mueller Report to the court for *in camera* review. *Id.* at 52 (granting in part and denying in part BuzzFeed's summary judgment motion and denying without prejudice DOJ's summary judgment motion). The court stated that it would, if necessary, issue a supplemental ruling on the summary judgment motions after completing its review. *Id.*

After reviewing the unredacted version of the Report, the district court then issued the order *sub judice*. *Elec. Priv. Info. Ctr. v. Dep't of Just.* (*EPIC II*), 490 F. Supp. 3d 246, 275 (D.D.C. 2020) (granting in part and denying in part both parties' motions for summary judgment). It examined DOJ's justifications for redacting portions of the Mueller Report under FOIA Exemptions 3, 5, 6, 7(A), 7(C) and 7(E). *Id.* at 255; *see* 5 U.S.C. § 552(b)(3), (5), (6), 7(A), 7(C), 7(E). Specifically, it granted DOJ's summary judgment motion with respect to (1) grand jury information protected by Exemption 3 and Federal Rule of Criminal Procedure 6(e), which prohibits disclosure of "matter[s] occurring before the grand jury," FED.

R. CRIM. P. 6(e); (2) intelligence sources and methods protected by Exemption 3 and the National Security Act, 50 U.S.C. § 3024(i)(1); and (3) law enforcement and privacy information protected by Exemptions 6, 7(A), 7(C) and 7(E). *Id.* at 260, 261, 266, 268, 270. The district court denied DOJ's motion and granted BuzzFeed's motion with respect to deliberative information regarding charging decisions allegedly protected by Exemption 5, concluding that DOJ must disclose the information redacted pursuant to this exemption, "unless such information has been properly withheld pursuant to another exemption."[2] *Id.* at 274. Finally, it determined that "there are no segregability problems in this case [as] all reasonably segregable information within [the Mueller Report] has been released." *Id.* at 275 (citation omitted).

With respect to Exemption 7(C)[3]—the only exemption at issue on appeal—and the names and personally identifiable information of individuals investigated but not charged by the Special Counsel, the district court concluded that DOJ "adequately explained the harms associated with releasing this information" and that the individuals' privacy interests were not outweighed by the public's interest in disclosure. *Id.* at 263, 265. It determined that these individuals—individuals "including the President's family, associates, and government officials"—despite their public prominence, maintained privacy interests in avoiding the stigma, embarrassment and other reputational or even physical harm that may come with being connected to a high-profile public corruption investigation. *Id.* at 264–65. BuzzFeed had "failed to show how the disclosure of individuals' names would contribute significantly to public understanding of the operations or

---

[2] DOJ has not challenged the district court's Exemption 5 determination.

[3] Exemption 7(C) is set forth *infra* at 9–11.

activities of the government . . . or would be probative of the government's alleged misconduct." *Id.* at 265–66 (cleaned up).

BuzzFeed challenges only this aspect of the district court's judgment: the grant of summary judgment to DOJ with respect to information withheld from disclosure under Exemption 7(C) and coded by DOJ in the redacted Report as "(b)(6)/(b)(7)(C)-2"—specifically information about individuals investigated but not charged and the application of law to facts resulting in particular declination decisions.[4] BuzzFeed categorizes the requested information as follows:

1. Information about the decision not to prosecute an unnamed person, likely Donald Trump, Jr., for potential campaign finance violations under Section 1030. Joint Appendix (J.A.) 749–50.

2. Information about several people who were investigated for false statements and obstruction but not charged. J.A. 764, 768–69.

3. Information about declination decisions that appear to relate to contacts between the

---

[4] The district court also granted summary judgment to DOJ regarding information redacted under Exemption 7(C) that included the "names, social media account information, and other contact information of unwitting third parties" and the "names, social media account information, contact information, and other personally-identifiable information of individuals merely mentioned in the [Mueller] Report." *EPIC II*, 490 F. Supp. 3d at 262, 266 (alteration in original). BuzzFeed does not challenge these determinations on appeal.

Russian government and the Trump campaign. J.A. 579.

4. Information about the decision not to charge Trump campaign officials with foreign agent offenses. J.A. 753.

## II.

The district court had subject matter jurisdiction pursuant to 28 U.S.C. § 1331, as the suit presented a federal question arising under FOIA. BuzzFeed filed a timely notice of appeal of the district court's final order granting in part and denying in part the summary judgment motions, giving this court appellate jurisdiction under 28 U.S.C. § 1291.

We review de novo the district court's grant of summary judgment, applying the same standards that governed the district court's decision. *Kimberlin v. Dep't of Just.*, 139 F.3d 944, 947 (D.C. Cir. 1998). "In a suit brought to compel production, an agency is entitled to summary judgment if no material facts are in dispute and if it demonstrates 'that each document that falls within the class requested either has been produced . . . or is wholly exempt from [FOIA's] inspection requirements.'" *Students Against Genocide v. Dep't of State*, 257 F.3d 828, 833 (D.C. Cir. 2001) (quoting *Goland v. CIA*, 607 F.2d 339, 352 (D.C. Cir. 1978)).

## III.

### A.

FOIA requires that each government agency, "upon any request for records which (i) reasonably describes such records and (ii) is made in accordance with published rules . . . , shall make the records promptly available to any person." 5 U.S.C.

§ 552(a)(3)(A). The statute "was designed to 'pierce the veil of administrative secrecy and to open agency action to the light of public scrutiny'" but the public's access to agency documents and records is not absolute. *Dep't of State v. Ray*, 502 U.S. 164, 173 (1991) (quoting *Dep't of Air Force v. Rose*, 425 U.S. 352, 361 (1976)). Indeed, FOIA provides specific exemptions authorizing an agency to withhold from disclosure information the statute would otherwise require be produced. *See* 5 U.S.C. § 552(b)(1)–(9). Because the exemptions were not designed to frustrate FOIA's "goal of broad disclosure," however, the Supreme Court has instructed "that the exemptions be 'given a narrow compass.'" *Milner v. Dep't of Navy*, 562 U.S. 562, 571 (2011) (quoting *Dep't of Just. v. Tax Analysts*, 492 U.S. 136, 151 (1989)). Further, the "agency bears the burden of establishing that a claimed exemption applies." *CREW I*, 746 F.3d at 1088 (citing *Dep't of Just. v. Reps. Comm. for Freedom of the Press*, 489 U.S. 749, 755 (1989)).

Under Exemption 7(C), the only exemption we examine today,[5] "records or information compiled for law enforcement purposes" are protected from disclosure, "but only to the extent that the production of such law enforcement records or information . . . could reasonably be expected to constitute an

---

[5] DOJ also justified the redactions of the passages of the Report at issue here under FOIA Exemption 6, which permits the withholding of "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). The district court addressed only Exemption 7(C) because it "establishes a lower bar for withholding material." *EPIC II*, 490 F. Supp. 3d at 262 (quoting *Prison Legal News v. Samuels*, 787 F.3d 1142, 1146 n.5 (D.C. Cir. 2015)). BuzzFeed does not challenge this aspect of the district court's ruling, conceding "DOJ's Exemption 6 claims need not be considered because . . . the standard under Exemption 7(C) is easier for the government to meet than Exemption 6." Br. of Appellants 10.

unwarranted invasion of personal privacy."[6] 5 U.S.C. § 552(b)(7)(C). To meet its burden of establishing that Exemption 7(C) applies, the agency must demonstrate that (1) disclosure could "reasonably be expected to constitute an unwarranted invasion of privacy" and (2) the "personal privacy interest" is not "outweighed by the public interest in disclosure." *Nat'l Archives & Recs. Admin. v. Favish*, 541 U.S. 157, 160 (2004). Once the agency shows that the "privacy concerns addressed by Exemption 7(C) are present," the party seeking disclosure must show "that the public interest sought to be advanced is a significant one, an interest more specific than having the information for its own sake," and that "the information is likely to advance that interest." *Id.* at 172. If the asserted public interest is "to show that responsible officials acted negligently or otherwise improperly in the performance of their duties, the requester must produce evidence that would warrant a belief by a reasonable person that the alleged Government impropriety might have occurred." *Id.* at 174. Asserting certain other public interests, as we explain below, does not require such an evidentiary showing. *See*, *e.g.*, *CREW I*, 746 F.3d at 1095 (no evidentiary requirement when asserting the public's interest in matters of substantive law enforcement policy).

We have held that "individuals have an obvious privacy interest cognizable under Exemption 7(C) in keeping secret the fact that they were subjects of a law enforcement investigation." *Citizens for Resp. & Ethics in Wash. v. Dep't of Just.* (*CREW II*), 854 F.3d 675, 682 (D.C. Cir. 2017) (quoting

---

[6] BuzzFeed has not contested in district court or on appeal Exemption 7(C)'s threshold requirement that the Mueller Report must have been compiled for law enforcement purposes. *EPIC II*, 490 F. Supp. 3d at 261 n.5; Br. of Appellants 10 (acknowledging "there is no dispute that the [Mueller] Report meets the Exemption 7 law enforcement threshold").

*Nation Mag. v. U.S. Customs Serv.*, 71 F.3d 885, 894 (D.C. Cir. 1995)). This privacy interest indisputably exists here. We must therefore "balance the . . . privacy interest against the public interest in disclosure." *Favish*, 541 U.S. at 171.

**B.**

We turn first to an examination of the personal privacy interests at stake and find much to commend in the district court's extensive analysis of those interests. *See EPIC II*, 490 F. Supp. 3d at 262–65. Surveying this Court's case law, the district court highlighted our longstanding recognition that "individuals have a strong interest in not being associated unwarrantedly with alleged criminal activity," *Stern v. Fed. Bureau of Investigation*, 737 F.2d 84, 91–92 (D.C. Cir. 1984), "disclosing the identity of targets of law-enforcement investigations can subject those identified to embarrassment and potentially more serious reputational harm," *Senate of P.R. v. Dep't of Just.*, 823 F.2d 574, 588 (D.C. Cir. 1987), and "the mention of an individual's name in a law enforcement file . . . carries a stigmatizing connotation," *Schrecker v. Dep't of Just.*, 349 F.3d 657, 666 (D.C. Cir. 2003). *See EPIC II*, 490 F. Supp. 3d at 264 (collecting cases).

BuzzFeed does not contest the significant privacy interests at stake here. Instead, it posits that the privacy interests are diminished because "the people in these records were high-ranking members of the Trump presidential campaign" and "it is already publicly known that specific members of the Trump campaign were included in the Special Counsel's investigation."

We have indeed stated that public officials "may have a somewhat diminished privacy interest" in the Exemption 7(C) balancing analysis. *CREW I*, 746 F.3d at 1092 (quoting *Quinon v. Fed. Bureau of Investigation*, 86 F.3d 1222, 1230 (D.C. Cir.

1996)). Of the individuals whose privacy interests may be jeopardized by disclosure of the requested information, only one is a public official. The remaining individuals are private citizens who served on a presidential campaign. And at oral argument BuzzFeed's counsel could not identify a case in which we or any other court has held that a private citizen's personal privacy interests are diminished merely by virtue of his service on a presidential campaign. All BuzzFeed can muster are cases in which we have suggested that a citizen's status as a public figure "might" ultimately weigh in favor of disclosure, *Fund for Const. Gov't v. Nat'l Archives & Recs. Serv.*, 656 F.2d 856, 865 (D.C. Cir. 1981), and that "corporate officials *may* have a somewhat diminished interest in personal privacy," *id.* at 873 (emphasis added). *See also Nation Mag., Wash. Bureau v. U.S. Customs Serv.*, 71 F.3d 885, 894 n.9 (D.C. Cir. 1995) ("candidacy for federal office *may* diminish an individual's right to privacy") (emphasis added). We hesitate to extend this somewhat equivocal reasoning to undermine the significant privacy interests of private citizens serving on a presidential campaign. And because this dispute can be resolved without such an extension, we decline BuzzFeed's invitation to do so, leaving open for future panels the question whether presidential campaign officials have diminished privacy interests.

BuzzFeed's second rationale for finding that the privacy interests are diminished is stronger but still misses the mark. Although the names of Trump campaign officials appear in public portions of the Report, they retain a privacy interest in "avoiding disclosure of the details of the investigation." *Kimberlin*, 139 F.3d at 949. "[T]he *fact* that [an individual] was under investigation" is distinct from the "privacy interest in the *contents* of the investigative files." *CREW I*, 746 F.3d at 1092. This, of course, makes sense because disclosure of the latter "could reveal new information about a person's conduct, going

beyond the facts in the public record." *CREW II*, 854 F.3d at 682. "Under such circumstances, that individual would retain a privacy interest in the non-disclosure of the new information." *Id.* Disclosure of the new facts could expose the individual to the very reputational and stigmatizing harms against which we have found Exemption 7(C) protects.

That's not what we have here, however—at least with respect to the declination decisions relating to purported campaign violations, which make up three of the four categories of redacted information identified by BuzzFeed. After conducting our own *in camera* review of the unredacted Mueller Report, we determined that the factual and personally identifying information alleged to be contained in the redacted passages on pages 579, 749–50 and 753 of the Joint Appendix is available elsewhere in the Report. *See* J.A. 629–30, 693–99. The redacted passages contain no new facts; they contain no new information or descriptions of conduct that have not been made public elsewhere in this very Report. The privacy interests, then, are not robust, as no additional reputational or stigmatizing harm can result from the disclosure of the information contained therein. Regarding the requested information on pages 764 and 768–69 of the Joint Appendix, on the other hand, the redacted materials there contain additional facts about individuals that are not disclosed or even intimated elsewhere in the Report. The individuals discussed in these passages "retain a privacy interest in the non-disclosure of the new information." *CREW II*, 854 F.3d at 682.

In sum, the privacy interests of the individuals investigated for campaign violations are diminished, but not eliminated, by disclosure of the relevant facts elsewhere in the Report. The individuals purportedly investigated for false statements—the fourth category alluded to above—retain a significant privacy interest in the contents of the Report because the redacted

sections include new facts that would be stigmatizing. As we explain *infra*, this disparity ultimately alters the balancing analysis between the campaign-violation information and the false-statement information.

Turning to the public interest side of the equation, we agree with the district court that "the public interest in the Special Counsel's investigation is substantial." *EPIC II*, 490 F. Supp. 3d at 265. The district court did not, however, identify the particular public interest considered in concluding that BuzzFeed "failed to show that the information sought is likely to advance the public interest in disclosure" and "how the disclosure of individuals' names would 'contribute significantly to public understanding *of the operations or activities of the government*.'" *Id.* (quoting *Consumers' Checkbook, Ctr. for the Study of Servs. v. Dep't of Health & Hum. Servs.*, 554 F.3d 1046, 1051 (D.C. Cir. 2009)). It is here that we part ways with the district court and conclude that BuzzFeed has identified a significant public interest previously recognized by this court and has made the required showing linking the disclosure with the advancement of the public interest: "[W]hether the Special Counsel adequately investigated and reached proper declination decisions as to potential crimes by members of the Trump campaign." In other words, the redacted material covers how the Special Counsel carried out his duties to investigate and prosecute criminal conduct. *CREW I*, 746 F.3d at 1093 (citing *Quinon*, 86 F.3d at 1231). This public interest suffices to tip the balance in favor of disclosure, at least with respect to the information relating to individuals investigated for campaign violations, as the factual circumstances surrounding this portion of the investigation are

already publicly available in the unredacted portions of the Report.

In *CREW I*, we recognized a "weighty public interest in shining a light on the FBI's investigation of major political corruption and the DOJ's ultimate decision not to prosecute a prominent member of Congress." 746 F.3d at 1092–93. In doing so, we followed decades of United States Supreme Court precedent, which holds that "the only relevant public interest in the FOIA balancing analysis [is] the extent to which disclosure of the information sought would 'she[d] light on an agency's performance of its statutory duties' or otherwise let citizens know 'what their government is up to.'" *Dep't of Def. v. Fed. Lab. Rels. Auth.*, 510 U.S. 487, 497 (1994) (quoting *Reps. Comm.*, 489 U.S. at 773). "[M]atters of substantive law enforcement policy," we added, "are properly the subject of public concern."[7] *CREW I*, 746 F.3d at 1093 (quoting *Reps. Comm.*, 489 U.S. at 766 n.18) (also collecting cases recognizing a public interest in how the Executive carries out substantive law enforcement policy). We have also stressed that the "relevant public interest is *not* to find out what [the official] himself was 'up to' but rather how the FBI and the DOJ carried out their respective statutory duties to investigate and prosecute criminal conduct." *Id.* (citing *Quinon*, 86 F.3d at 1231).

Having identified a significant public interest, BuzzFeed must still show that "the information is likely to advance that interest." *Favish*, 541 U.S. at 172. We believe it has done so. It seeks disclosure of "passages contain[ing] detailed legal analysis that shows how the Special Counsel interpreted the

---

[7] No showing of impropriety or illegality is required, as matters of substantive law enforcement policy are recognized public interests "whether or not the policy in question is lawful." *Am. Civ. Liberties Union v. Dep't of Just.*, 655 F.3d 1, 14 (D.C. Cir. 2011).

relevant law and applied it to the facts in reaching the declination decisions." This, BuzzFeed argues, "is precisely the kind of information that would allow the public to understand substantive matters of important law enforcement policy." Turning once again to *CREW I*, we agree. "Disclosure of the [information] would likely reveal much about the diligence of the [Special Counsel's] investigation and the [] exercise of [his] prosecutorial discretion: whether the government had the evidence but nevertheless pulled its punches." *CREW I*, 746 F.3d at 1093. Disclosure would also show how the Special Counsel interpreted the relevant law and applied it to already public facts in reaching his declination decisions. We reject DOJ's argument that the public interest is reduced because "[m]ost of the Mueller Report has already been disclosed" and the "Congress has also released a substantial volume of information about the events underlying the Special Counsel's investigation."[8] Those statements, in and of themselves, may be true but they are irrelevant to the fact that the Special Counsel's legal analysis that led to the declination decisions has not been released and likely would "contribute significantly to public understanding of the operations or activities of the government." *Reps. Comm.*, 489 U.S. at 775. Thus, BuzzFeed has identified a significant public interest and demonstrated how disclosure will advance that interest.

We turn finally to the balancing of the public and privacy interests at stake, following the "case-by-case" approach we

---

[8] DOJ's reliance on our decision in *Judicial Watch, Inc. v. National Archives & Records Administration*, 876 F.3d 346 (D.C. Cir. 2017), is also misplaced. That case is distinguishable. The FOIA requesters there sought copies of draft indictments against Hillary Rodham Clinton related to the Independent Counsel's investigation in the early 1990s. *Id.* at 347. Unlike here, it did not involve information that would show how law enforcement applied law to facts to reach a charging or declination decision.

have previously endorsed. *CREW I*, 746 F.3d at 1095. As discussed, there are substantial interests on both sides of the scale. The public interest in matters of substantive law enforcement policy is strong with respect to each category of redacted information sought by BuzzFeed. The privacy interests, undoubtedly significant, are slightly less (although not eliminated) with respect to the individuals whose personally identifiable information is already available in public portions of the Report in the context of potential criminal charges. We refer to these broadly as the three categories of information that detail the declination analysis for purported campaign violations. For this material, the strong public interest tips the scale in favor of disclosure, as releasing this information would show only government decisionmaking, not new private information. The privacy interests relating to individuals investigated for but not charged with making false statements, however, remain significant. On our read, this material contains additional facts about individuals that are not disclosed elsewhere and that would be highly stigmatizing. We therefore conclude that their substantial privacy interests tip the scale in favor of non-disclosure for this category of material.

Accordingly, we reverse the district court's grant of summary judgment to DOJ on its Exemption 7(C) withholding claims for the information regarding the Special Counsel's declination decisions on the purported campaign violations. The district court is to order DOJ to disclose the material it withheld pursuant to Exemption 7(C) only on the following pages of the Joint Appendix: 579, 749–50 and 753. The relevant material is marked by the notation "(b)(6)/(b)(7)(C)-2."[9] In all other respects, we affirm the district court's grant of

---

[9] We note that portions of the material relating to false statements are also marked by the notation "(b)(3)-1." This notation

summary judgment to DOJ on its Exemption 7(C) withholding decisions.

*So ordered.*

---

covers the entire redacted material on J.A. 764 and portions of the material on J.A. 769. It refers to FOIA Exemption 3, which protects materials "specifically exempted from disclosure by statute." 5 U.S.C. § 552(b)(3). In these portions, information was withheld under Exemption 3 because it constitutes federal grand jury information, prohibited from disclosure by Federal Rule of Criminal Procedure 6(e). The district court granted DOJ's motion for summary judgment on its Exemption 3 withholding claims, *EPIC II*, 490 F. Supp. 3d at 260, and BuzzFeed does not challenge that ruling. Thus, Exemption 3 provides an alternative basis for withholding from disclosure these portions of the passages relating to false statements, independent of our Exemption 7(C) analysis. Our decision today does nothing to disturb the district court's Exemption 3 determination.